## THE PROPRIETORS OF THE CABOT AND WEST SPRINGFIELD BRIDGE *vs.* SIDNEY CHAPIN & others.

Where, on the organization of a corporation, the number of shares of the capital stock, and the sum to be paid for each, are fixed by vote, and inserted in the agreement of subscription, the subscribers are not bound to proceed, and may refuse to pay any part of their subscriptions, until the requisite number of shares is subscribed for, at the rate fixed by the vote; and where the price of shares is fixed, a subscription, on condition that the shares shall be paid for, share by share, by other stock of the same nominal value, but the market value of which is less, is not a compliance with the agreement.

THE plaintiffs were incorporated by an act of the legislature ( *St.* 1846, *c.* 160,) passed on the 27th of March, 1846, for the

purpose of building a bridge over the Connecticut river between Springfield and West Springfield.

On the 27th of May, 1846, a meeting of the persons named in the act and their associates was held; and, at an adjournment thereof, held on the 17th of August following, it was voted to open books for the subscriptions to the stock of the bridge; that the amount of each share should be $100; and that the number of shares should be four hundred.

In pursuance of these votes, an agreement of subscription was drawn up and signed by the associates, and amongst others by the defendants, for three shares, in the following form:—

" We the undersigned hereby agree to take the number of shares set opposite our names, in the capital stock of the ' Cabot and West Springfield Bridge,' and to pay in the amount of the same, in such assessments as shall from time to time be laid by the directors hereafter to be chosen, and at such time and place as they shall direct. The capital stock, to be in four hundred shares of one hundred dollars each, is $40,000. Cabotville, August 19th, 1846."

On the 2d of April, 1847, three hundred and eighty-seven shares having been subscribed for, a meeting of the associates was called and held, at which the corporation was organized by the choice of officers, and the directors were authorized to receive proposals for the construction of the bridge. An assessment of $10 a share was laid, at a meeting held on the 9th of April, and further assessments were laid, from time to time, to the full amount of the par value of the shares, the last one being of $20 on the 29th of April, 1848.

Of the shares thus subscribed, two hundred were taken by James K. Mills, as treasurer of certain manufacturing companies at Chicopee, which, it was agreed, and this was the condition of the subscription, were to be paid for in the stock of the Connecticut River Railroad company, share for share. The par value of the latter was $100 a share; but the market value at the time of the subscription, only $93 a share. The condition, upon which this subscription was made, was communicated to the shareholders present at the meeting of the 9th of April, previous to laying the first assessment.

The defendants never attended any of the meetings of the subscribers to stock.

By an arrangement with the contractors for building the bridge, the two hundred shares of railroad stock were to be received by them, in part payment, at the rate of $93 a share. None of these shares were ever transferred by Mills to the plaintiffs, or to the contractors; but in July following, Mills agreed with the contractors to take the shares, at the same rate at which they were to receive them. This arrangement was made known to the treasurer of the plaintiffs and assented to by him; and in pursuance thereof he made his drafts upon Mills for the proceeds of the railroad shares at $93 a share, as the assessments became payable. Instead of receiving and making transfers of the stock, upon payment of all the assessments in this manner, certificates of stock in the bridge were issued to the manufacturing companies respectively, for which the subscription of the said two hundred shares was made. By one of the by-laws of the plaintiffs, it was provided, that " certificates of stock shall be issued to each shareholder, upon the payment of the full amount of his assessment."

The case was submitted to the court of common pleas, from whence it came to this court by appeal, upon a statement of the foregoing facts, together with others which became immaterial in the view taken of the case by the court.

*J. Wells*, for the plaintiffs.

*G. Walker*, for the defendants.

DEWEY, J.   The true construction of the contract of the defendants is, that they were to take and pay for three shares in a stock company, the capital stock of which was to consist of four hundred shares of $100 each. Before the making of the subscription by the defendants, the capital stock and the number of shares had been fixed by the corporation. The number of shares, and the sum to be paid for each being thus fixed, and inserted in the articles of subscription, the subscription was to that extent a conditional one; and every subscriber was at liberty to refuse to proceed with the proposed undertaking, until the requisite number of shares had been taken.

It might materially affect the interests of the subscribers,

whether the whole number of shares, or a less amount, was subscribed for ; both as respects the assessments to be made upon the stock, and also as to the ability of the corporation to complete the bridge, and thus entitle themselves to tolls. The whole undertaking, as a matter of profit and loss to the subscribers, might depend upon having the full amount of the capital taken up. When the purpose of the subscribers to a stock is that of proceeding to the execution of the business of the company, upon a partial filling up of the capital, and it is deemed expedient to levy assessments before the entire stock is taken up, there should be inserted a provision to that effect in the articles of subscription.

In the absence of such a provision, it is necessary, before an individual subscriber can be charged upon his subscription, that the whole capital stock, or number of shares which constitute it, should have been taken up, or the party must have waived his right to insist upon that condition by his own acts. If a subscriber, knowing that the requisite subscriptions had not been made to fill up the capital, had attended meetings of the corporation, and had coöperated in the votes for expending money, and for making contracts, and in other acts which could only be properly done upon the assumption, that the subscribers intended to proceed with the stock partially taken up, such subscriber might be estopped from setting up this defence. But nothing of this kind appears in the case stated by the parties, and we must therefore assume, that the defendant has done nothing to waive his rights to the defence arising from the want of a full subscription to the capital stock of the company.

The further inquiry then arises, whether four hundred shares were duly taken and subscribed for. Various facts are relied upon by the defendant, to show that no proper subscription to the full amount of the capital was ever made. Without expressing any opinion upon the other grounds, we think the defence may be well maintained upon the facts stated in relation to the subscription of James K. Mills, as treasurer of certain manufacturing corporations. This subscription, which was for two hundred shares, was upon the condition of paying

5 *

for them by a transfer of a similar number of shares in the Connecticut River Railroad company, at their par value of $100 a share, the market price of the same being only $93 a share, making a difference of $1,400 in the entire sum to be paid for two hundred shares, from what would be paid at $100 a share in cash.

In our opinion, the subscription for the four hundred shares was to be a subscription payable in cash, or its equivalent, calculating the shares at the rate of $100 each. The defendants subscribed for three shares at that rate ; and they had a right to expect that their associates should take their shares on similar terms with themselves, if they were to be held to the payment of their subscription.

It may have been a very important and necessary arrangement, to secure the object in view, that of building a bridge between Cabotville and West Springfield, to take the subscription of the manufacturing companies, at the rate of $93 a share ; but if this was done without the assent of the other shareholders, they were not bound to treat such subscriptions as legal subscriptions, in order to make up the required number of four hundred shares.

The result is, therefore, that the subscription of four hundred shares, at the value of $100 a share, was not effected, and there being no waiver of this condition, on the part of the defendants, no liability to pay the assessments attached to them by reason of their subscription for three shares.

*Judgment for the defendants*